CREEKMORE *v.* IZARD.

5-2907                                                        367 S. W. 2d 419

Opinion delivered May 6, 1963.

[Rehearing denied June 3, 1963.]

*Conley Byrd, Ralph W. Robinson* and *H. B. Stubble-field,* for appellant.

*Daily & Woods, Marvin Thaxton* and *Ray Trammell,* for appellee.

*Ark. Bar Association,* Amici Curiae.

*Catlett & Henderson,* Amici Curiae.

JIM JOHNSON, Associate Justice. This appeal involves the question of whether a notary public and a realtor are practicing law when filling in simple standardized forms used in real estate transactions. The action was instituted by appellant Alfred Creekmore, a Notary Public in Mountainburg, to declare his right to continue to fill in the blanks in printed real estate forms, bills of sale, etc., none of which he contended constituted the practice of law. Clyman Izard and Fines F. Batchelor, Jr., as officers and members of the Crawford County Bar Association, and Marvin D. Thaxton, Chairman of the Unauthorized Practice of Law Committee of the Arkansas Bar Association, were made parties in their individual and representative capacities as members of a class in accordance with Ark. Stats. § 27-809. After an answer had been filed, Everett O. Sewell, a regularly licensed and bonded real estate broker, was permitted to intervene, alleging that it was desirable for him in connection with his business as a real estate broker to be permitted to fill in the blanks in printed standardized real estate forms prepared or approved by a lawyer; that he possessed the required knowledge and skill to fill in such blanks in connection with real estate transactions handled by him as a real estate broker; and that his doing so would not adversely affect the public interest. Upon a trial on the merits, the trial court found that appellant Creekmore, a notary public, in filling in the blanks of printed forms of bills of sale, chattel mortgages, promissory notes, warranty deeds, quitclaim deeds, options, loan applications, real estate mortgages, deeds of trust, releases and satisfactions of real estate mortgages, powers of attorney, federal income tax returns, notices to quit or vacate real property and mineral (oil and gas) leases, constituted the practice of law; dismissed the intervention of appellant Sewell; and enjoined appellant Creekmore from performing the acts mentioned.

During oral argument, counsel for appellants admitted that they were entitled to no relief unless the rule in the case of *Arkansas Bar Association* v. *Block,* 230 Ark. 430, 323 S. W. 2d 912 could be relaxed. Following the decision in that case realtors were enjoined from the use of forms such as are involved in this case, see *Block* v. *Arkan-*

*sas Bar Association,* 233 Ark. 516, 345 S. W. 2d 471. Appellants earnestly argue that an engineer, an insurance agent, a banker, a merchant, a stock broker, and practically every other business or professional man does some acts which affect the legal rights of the people they serve, and that to require a person to employ a lawyer in every transaction involving them would virtually bring the wheels of commerce to a halt.

The appellees point out that the decision in *Arkansas Bar Association* v. *Block, supra,* is well decided and should remain undisturbed. In support of the soundness of the Block decision, they call to our attention the fact that it has been followed by a decision of the Arizona Supreme Court in the case of *State Bar of Arizona* v. *Arizona Land Title & Trust Co.,* 90 Ariz. 76, 366 P. 2d 1, and that it conforms to a realtor-lawyer agreement entered into between the American Bar Association and the National Association of Real Estate Boards in 1942. In 28 *Unauthorized* Practice News 252, cited by appellees, the background of the lawyer-realtor controversy in Arizona both prior to and subsequent to the decision in *State Bar of Arizona* v. *Arizona Land Title & Trust Co., supra,* is discussed in detail by Wayland Cedarquist, a lawyer member of the National Conference of Lawyers and Realtors. This article suggests that, in the interest of the realtors, the lawyers and the public, some compromise between the lawyers and realtors should have been resorted to instead of the constitutional amendment which the Arizona realtors proposed.[1]

The Supreme Court of Colorado, in *Conway-Bogue Realty Inv. Co.* v. *Denver Bar Ass'n,* 135 Colo. 398, 312 P. 2d 998, after holding that the preparation of instruments such as are involved here constituted the practice of law, said:

"The remaining and most difficult question to be determined is:

"*Should the defendants as licensed real estate brokers (none of whom are licensed attorneys) be enjoined*

---

[1] The Arizona constitutional amendment proposed by the realtors, giving them the right to fill in forms such as are involved here, carried by a vote of more than 3 to 1.

*from preparing in the regular course of their business the instruments enumerated above, at the requests of their customers and only in connection with transactions involving sales of real estate, loans on real estate or the leasing of real estate, which transactions are being handled by them?*

"This question we answer in the negative.

"The announced purpose of these suits are twofold: (a) To protect the licenses, privileges and franchises granted to attorneys from encroachment and damage by reason of the alleged unauthorized acts of the defendants.

" (b) To protect the public and particularly those persons participating in real estate transactions through brokers, from the dangers inherent in the preparation of legal documents by persons unskilled in the intricacies of the law rather than by lawyers.

"The defendants are all engaged in a lawful business. It is considered of such importance that the State of Colorado has adopted regulatory legislation providing for the licensing of persons engaged therein.

" 'No person shall be granted a license until he shall have passed a satisfactory examination and shall have established that he is trustworthy and bears a good reputation for good and fair dealing and is competent to transact the business of a real estate broker or real estate salesman in such manner as to safeguard the interest of the public . . .' C. R. S. '53, 117-1-1.

"We distinguish between the part of the public in quest of legal advice and services and out of which arises only the relationship of attorney and client and those bent on buying, leasing or selling real estate or borrowing money thereon, and out of which arises the relationship of seller-broker, buyer-broker, lessee-broker, lessor-broker, lender-broker or borrower-broker.

"The record shows conclusively that the defendants do not prepare papers or give advice to anyone except their customers who through solicitation or otherwise engage or employ them as brokers.

"On the other hand, the record shows conclusively that the defendants do select, prepare and explain the documents enumerated above at the request of their customers, without charge other than the usual broker's commission, and only in connection with real estate transactions then being handled by them and property left in their charge for management.

. . . .

"The testimony shows, and there is no effort to refute the same, that there are three counties in Colorado that have no lawyers, ten in each of which there is only one lawyer, seven in each of which there are only two lawyers; that many persons in various areas of the state reside at great distances from any lawyer's office. The testimony shows without contradiction that the practices sought to be enjoined are of at least 50 years uninterrupted duration; that a vast majority of the people of the state who buy, sell, encumber and lease real estate have chosen real estate brokers rather than lawyers to perform the acts therein complained of. Though not controlling, we must make note of the fact that the record is devoid of evidence of any instance in which the public or any member thereof, layman or lawyer has suffered injury by reason of the act of any of the defendants sought to be enjoined. Likewise, though not controlling, we take judicial notice of the fact that the legislature of the state, composed of 100 members from all walks of life and every section of the state, usually called upon by their constituents to adopt legislation designed to eliminate evils and protect the public against practices contrary to the public welfare, has never taken any step to prevent continuation of the alleged evil which we are now asked to enjoin.

"The question here to be resolved, and similar questions involving other businesses, has been before the courts of most of the 48 states, with widely divergent views and decisions resulting. There is very respectable authority for enjoining the acts complained of here; there is also respectable authority for denying injunctive relief. We feel that the weight of authority and especially the more recent decisions, sanctions our holding that the acts of

which complaint is made, done without separate charge therefor by licensed real estate brokers only in connection with their established business, and in behalf of their customers and in connection with a *bona fide* real estate transaction which they are handling as brokers, should not be enjoined.

"The plaintiffs have much logic in support of their contentions. Reason, public convenience and welfare seem to be on the side of the defendants.

"We feel that to grant the injunctive relief requested, thereby denying to the public the right to conduct real estate transactions in the manner in which they have been transacted for over half a century, with apparent satisfaction, and requiring all such transactions to be conducted through lawyers, would not be in the public interest; that the advantages, if any, to be derived by such limitation are outweighed by the conveniences now enjoyed by the public in being permitted to choose whether their broker or their lawyer shall do the acts or render the service which plaintiffs seek to enjoin."

In many respects our laws and history are analogous to those recited in the Colorado case.[2] The evidence in this case shows that there are no lawyers in Mountainburg, Arkansas, and for a distance of 20 miles or more in either direction, and that there are no lawyers in Evening Shade, Arkansas, and for a distance of 20 miles or more in either direction, and we take judicial notice[3] that there are many such towns in Arkansas similarly situated in which there are no lawyers. The real estate brokers licensing statutes, Ark. Stats. § 71-1301, *et seq.,* in addition to requiring applicants to bear a good reputation for honesty, truthfulness and fair dealing, require that a broker take a written examination and provide for a $2,000.00 bond, conditioned that the broker and any salesman employed by him shall well and truly comply with the provisions of the brokers licens-

---

[2] The General Assembly of the State of Arkansas passed Act 135 of 1941, designed to prohibit to some extent the drafting of instruments such as are involved here. This Act was referred to the people and defeated in a referendum in the general election of 1942.

[3] *Metropolitan Life Insurance Co.* v. *Fry,* 184 Ark. 23, 41 S. W. 2d 766.

ing act. The act also gives the public the right to sue directly upon the bond for the violations enumerated in Ark. Stats. § 71-1307.

The testimony introduced on behalf of appellants shows that prior to the decision in *Arkansas Bar Assn.* v. *Block, supra,* it took only a matter of four or five minutes to fill in the blanks on the necessary deed and mortgage forms to complete a real estate transaction, but that since the Block decision it takes some three or four days to get a lawyer to prepare the necessary instruments; and that occasionally the broker takes a blank form, fills in all the necessary information, transmits it to the office of the lawyer, who subsequently retypes the whole instrument, for which he is paid a fee. Testimony further shows that many mistakes result from passing the information necessary to preparing a deed from the broker to the lawyer.

The appellants argued that should we, acting under our rule-making power under Amendment 28 to the Arkansas Constitution, permit a licensed and bonded real estate broker to complete the forms involved in a real estate transaction upon simple standardized forms approved by his lawyer, the broker's lawyer, in addition to the Real Estate Licensing Board, would also have an opportunity to say whether the particular licensed and bonded real estate broker possessed the requisite knowledge and skill to fill in the blanks in the forms approved by him. They also point out that the lawyer, at the same time, by the simple expedient of noting on the forms that they had been approved for a named broker by the approving lawyer, could police the broker's future operations by picking up the forms that he had approved for that particular broker or by refusing to approve additional supplies of forms.

The individual members of this court have spent many hours of research in trying to determine what does and what does not constitute the practice of law. After the oral argument was held, we requested *amicus curiae* briefs. There seems to be no clear cut definition of the term. In *Ark. Bar Assn.* v. *Union National Bank,* 224 Ark. 48, 273 S. W. 2d 408, we said:

*"An Individual Can Practice Law For Himself.* It is generally conceded that an individual who is not a licensed attorney can appear in the courts and engage in what is commonly conceded to be practicing law provided he does so for himself and in connection with his own business.''

Many activities fall within the ambit of the practice of law, for instance, a merchant collecting his own bills is not practicing law while a lawyer performing the same service for the merchant would be practicing law.

The relief here sought by appellant Sewell, the realtor, falls within the ambit of the merchant for the filling in of the simple standarized forms here involved is a necessary incident of his business just as the collection of the merchant's bills is a necessary incident of his business. Therefore we are ruling that the decision in *Ark. Bar Assn.* v. *Block,* 230 Ark. 430, 323 S. W. 2d 912, should be modified to provide that a real estate broker, when the person for whom he is acting has declined to employ a lawyer to prepare the necessary instruments and has authorized the real estate broker to do so, may be permitted to fill in the blanks in simple printed standardized real estate forms, which forms must be approved by a lawyer; it being understood that these forms shall not be used for other than simple real estate transactions which arise in the usual course of the broker's business and that such forms shall be used only in connection with real estate transactions actually handled by such brokers as a broker and then without charge for the simple service of filling in the blanks.

Appellant Creekmore, the notary public, does not stand in the same shoes as the broker. His preparation for a fee of deeds, mortgages, bills of sale, etc., clearly constitutes the practice of law for there is no connection between his business and that of preparing such instruments. The learned trial judge was correct in confining him in his capacity as a notary public to the taking of acknowledgments.

The decree of the trial court also enjoins appellant Creekmore from preparing income tax forms. In this

particular, the decree is too broad. A person does not have to be a lawyer to fill out income tax forms. See *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 52 N. E. 2d 27, 31.

Some question has been raised as to whether this is a proper class action, but under our civil procedure, Ark. Stats. § 27-809, a person is entitled to sue as a member of a class or to sue representative members of a class as a whole. See *Massey, Trustee* v. *Rogers,* 232 Ark. 110, 334 S. W. 2d 664.

From what has been said it follows that the decree is reversed as to appellant Sewell and affirmed with respect to appellant Creekmore except for the injunction against filling out income tax forms, each party to bear his own costs.

McFADDIN and ROBINSON, JJ., dissent.

ED. F. McFADDIN, Associate Justice (dissenting). I am strongly of the opinion that under the authority of the two Block cases,[1] the decree of the Chancery Court herein should be affirmed in every respect, except as to the federal income tax returns. The first Block case was decided in 1959, and the second Block case was decided in 1961; and every matter presented in the present case was before us in those cases. I maintain that we should not overrule cases so recently decided. Trial judges will never know when to follow the rule of *stare decisis* if appellate judges change the holdings with each subsequent case.

The volume containing the first Revised Statutes of Arkansas was published in 1838, and Albert Pike wrote the preface to that volume, which preface is a classic. On Page VII of the preface, there is this language:

"Change and innovation in the law is generally a great evil, and every alteration in existing statutes should be made slowly, cautiously, and with due deliberation. It

---

[1] The first Block case is *Arkansas Bar Assn.* v. *Block,* 230 Ark. 430, 323 S. W. 2d 912; and the second Block case is *Block* v. *Arkansas Bar Assn.,* 233 Ark. 516, 345 S. W. 2d 471. Throughout this dissenting opinion these cases will be referred to as the "Block cases."

is sometimes better to abide by a law manifestly unjust, unequal, and unfounded in reason than by altering it to unsettle rules of practice and titles to property . . .''

What Albert Pike said of *legislation* is many times more applicable to *judicial decisions*. In *Carter Oil Co.* v. *Weil*, 209 Ark. 653, 192 S. W. 2d 215, Judge FRANK SMITH, speaking for this Court, quoted from *Taliaferro* v. *Barnett*, 47 Ark. 359, 1 S. W. 702:

" 'A decision of the court when overruled stands as though it had never been, and the court in reversing judgment declares what the rule of law was in fact when the erroneous decision was made.' "

In the first Block case we listed twenty-five instruments which real estate brokers were then using in their business, and we held that, with the sole exception of No. 14 (offers and acceptances), the brokers, in filling in the blank spaces, were Practicing law.[2] Now, in the present case, the two Block cases are specifically "modified" by this language:

"Therefore we are ruling that the decision in *Arkansas Bar Assn.* v. *Block*, 230 Ark. 430, 323 S. W. 2d 912, should be modified to provide that a real estate broker, when the person for whom he is acting has declined to employ a lawyer to prepare the necessary instruments and has authorized the real estate broker to do so, may be permitted to fill in the blanks in simple printed standardized real estate forms, which forms must be approved by a lawyer; it being understood that these forms shall not be used for other than simple real estate transactions which arise in the usual course of the broker's business and that such forms shall be used only in connection with real estate transactions actually handled by such brokers as a broker and then without charge for the simple service of filling in the blanks."

---

[2] Here is the language of the opinion: "As indicated, we hold that the preparation of any of the instruments here involved, or any other instruments involving real property rights for others, either with or without pay, save and except Instrument No. 14 above, constitutes the practice of law in this State."

I submit that no person can now tell how many of the twenty-four instruments prohibited to realtors in the first Block decision are now allowed to realtors by the present decision, and how many of the twenty-four instruments prohibited in the first Block decision are still prohibited to realtors. The Majority Opinion in the present case merely says, "permitted to fill in the blanks in simple standardized real estate forms which must be approved by a lawyer." Which forms are "simple standardized real estate forms?" The Majority Opinion does not answer the question. The law is thus left in confusion; and subsequent litigation will be required to settle the confusion. The words of Albert Pike, as contained in the preface to the Revised Statutes of 1838, are certainly applicable to the present case.

There is a splendid way in which this Court can keep itself abreast of the times in conveyancing matters. I have repeatedly urged the Court to adopt such a course; but my suggestions have been brushed aside. I now make the suggestion here. Amendment No. 28 to the Arkansas Constitution was adopted by the People in 1938; and the full text of the Amendment is:

"The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law."

Acting under the mandate of that Amendment, this Court on April 24, 1939, promulgated rules regulating the professional conduct of attorneys at law; but this Court has never seen fit to promulgate rules regulating the practice of law so as to clearly delineate when realtors are engaged in the practice of the law. In the first Block case we refused to define the practice of the law, but did hold that the completion of any one of twenty-four different instruments there listed constituted the practice of the law. I thought then and say now that this Court should promulgate rules definitely stating which transactions constitute the practice of the law, and which do not. If, as the years go by, the Court should find that certain changes needed to be made in the rules, then the Court would be free to do so

under the constitutional power. Rules operate prospectively; whereas Court Opinions operate retrospectively, as shown in *Carter Oil Co.* v. *Weil, supra.*

I insist that the present case should be affirmed (except only as to the filling in of federal tax returns); and this Court should either simultaneously or later promulgate rules definitely stating what instruments may not be completed by realtors. Then any interested party or organization desiring a change in the rules may apply to the Court for such change without having overstepped an unstated line. The opinion of the Majority in the present case will inevitably lead to subsequent litigation. The Constitution says: "The Supreme Court shall make rules governing the practice of the law . . ." When we follow the Constitutional mandate it will be unnecessary to have all these suits like the one at bar.

For the reasons herein stated, I respectfully dissent from the Majority holding.