Obert M. UNDEM *v.* STATE
BOARD OF LAW EXAMINERS

79-196                                         587 S.W. 2d 563

Opinion delivered October 15, 1979
(In Banc)

684

*Niblock & Odom,* for appellant.

*Earnest G. Lawrence,* of *Little, Lawrence, McCollum & Mixon,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Obert M. Undem applied to the State Board of Law Examiners for admission to the bar of Arkansas by reciprocity under Rule XI of the Rules Governing Admission to the Bar. Undem was admitted to the practice of law in the State of Minnesota on October 7, 1963. There is no evidence that he ever engaged in the active practice of law in that state, except for counseling one family and handling the disposition of an estate for them, all prior to 1972. He came to Arkansas in 1974. He first applied for admission to practice law in Arkansas on September 25, 1978. The Chairman of the State Board of Law Examiners ruled that Undem was ineligible for admission because he has not engaged in the active practice of law for at least three years immediately preceding his application as required by Rule XI. In response to a request by Undem, a hearing was held before a panel of three members of the Board of Law Examiners as provided by Rule XIII A. Upon the record made, the board made the following findings:

A. That the Appellant has been admitted for at least four (4) years to the Bar of the highest Appellate Court of Minnesota, which has requirements for admission

substantially equivalent to the requirements of this State, is of good moral character, has removed himself to Arkansas, and intends to practice law in Arkansas; and,

B. That Appellant has been employed as President and Chief Executive Officer of McIlroy Bank, Fayetteville, Arkansas from 1974 to the date of his application; and,

C. That said employment did not constitute the "active practice of law" as set forth by Rule XI of the Rules of the Arkansas Supreme Court; and,

D. That since Appellant has not been engaged in the "active practice of law" for at least three (3) years preceding application for admission, as required by Rule XI of the Rules of the Supreme Court, he was found to be ineligible for admission by reciprocity.

On review de novo, we agree with the board's findings and affirm.

The only issue is whether Undem's service as president and chief executive officer of McIlroy Bank & Trust constituted "active practice of the law." Undem has never appeared in court or in any administrative forum in Arkansas on behalf of a client. He has never received a fee for any legal services rendered in this state. He states that, in the course of his work in various areas of the bank and particularly the trust department, he had occasion to work with the bank's customers, who were in the process of considering different alternatives in the fields of estate planning, tax planning, etc., (which are not necessarily in the exclusive domain of the legal practitioner).

The record, other than Undem's testimony, consists of letters from prominent judges, lawyers and businessmen in Fayetteville and its vicinity. Were Undem applying for permission to take the bar examination, these letters would undoubtedly foreclose any further investigation into his

background and eligibility for admission, if he passed the bar examination.

One prominent lawyer stated that he did not believe that Undem was in the active practice of law in Fayetteville, but that he maintained working experience with a great many legal matters in his position at the bank. Another stated that, while the matters for which Undem was responsible did, on occasion, involve questions of law, he did not think it would be correct to conclude that he was actively engaged in the practice of law but that it would be correct to conclude that Undem was actively engaged in bank management and his involvement with the law was incidental thereto. A Little Rock lawyer attested to Undem's skill and awareness of the current state of the law as it related to banks, banking and trust and estate matters, but stated that Undem had not, to his knowledge, been actively engaged in the practice of law during the period of his acquaintance with Undem. Another prominent Fayetteville lawyer stated that, to the best of his knowledge, Undem did not actively participate in the practice of law in Northwest Arkansas, but was undoubtedly involved, on a day-to-day basis in the study and application of rules, regulations and law promulgated by various administrative and regulatory agencies with which McIlroy Bank dealt. A prominent professor of law at the University of Arkansas stated that, even though Undem had not been engaged in the practice of law during the time he served as bank president, he had had much contact with legal problems and, if admitted, would be well prepared to deal with the type of legal problems that might expectedly be presented to him.

A vice-president of McIlroy Bank, who had daily contact with Undem as her direct supervisor, in which capacity he routinely and on an almost daily basis, reviewed for her such matters affecting her area of responsibility as personnel policies, questions regarding negotiable instruments, surety bonds, safe deposits, and interpretation of federal and state regulatory directives, said that he regularly handled "things" for her and her department that had been referred to outside counsel prior to his joining McIlroy Bank in 1974. She also said Undem regularly assisted in the preparation and review

of instruments relating to legal actions concerning the bank, preparatory to delivery of those matters into the hands of outside legal counsel for courtroom conclusion.

Other letters considered by the chairman had nothing to do with Undem's practice of law during the three years next preceding his application. On this record, the chairman could not have reached any conclusion other than the one he did, i.e., that Undem had not been engaged in the active practice of law for the preceding three years as required by our rules.

Undem attempted to present a better record for the board's consideration, after the chairman's ruling. The conclusion to be reached, however, was not altered. Undem added many activities that fit into the proper functions of the chief executive officer of a bank but that certainly do not constitute the practice of law, such as: preparation for and conduct of the annual stockholders' meetings; communicating irregularities in banking matters with the FBI; and review of loan files. He also enumerated the following: drafting of security forms for a $1,000,000 unsecured 10-year capital note issue; the transfer and reissuance of securities, debt and equity, with review of lost certificate bonds and probate documents, and observance of the requirements of the State Banking Department, the Arkansas Securities Commissioner, United States Securities and Exchange Commission and the Federal Reserve Board with reference to evidence of compliance or exemption in connection with the maturing of an issue of convertible debentures, part of which were converted to stock; participation in the preparation and review of the bank's lease of its building from its holding company; completion and reviewing of subleases; reviewing and approving amendments and alterations of leasing contracts; reviewing arrangements of lease financings for bank customers in the light of requirements of the Internal Revenue Service, the Federal Reserve Bank, the Arkansas Statutes and the regulations by the "Commissioner of Banks"; operation of the escrow department, which included review of deeds, notes, probate documents, etc.; creating and reviewing agreements with contractors and suppliers in connection with branch bank construction and remodeling,

which involved contact with the problems of compliance with city ordinances; negotiating and effecting material equipment purchases and leases with purchase options; dealing with problems relating to claims for damage in installation, product warranties, etc.; coordination and direction of progress of matters referred to outside counsel; handling most of the questions relating to legal problems of the bank to the point of referral to outside counsel where formal court processing was involved; dealing with questions arising in the safe deposit department and questions from tellers and new account areas concerning negotiability of instruments; making liability determination on "stop payments," return items, forged endorsements, forged instruments, etc.; discussing claims against a bonding company before presentation; reviewing garnishments, levies and subpoenas for determination of appropriate action; reviewing portions of examination reports completed by bank personnel to determine appropriateness of answers in terms of requirements of regulatory agencies and the consequent liability of the bank, employees and directors relating thereto; reviewing title opinions, adequacy of documentation, collateral pledge forms, personal and corporate guarantees, adequacy of authorizing documents for corporation and partnership borrowing for compliance with United States and Arkansas statutes; dealing with questions regarding bankruptcies, election of remedies, etc.; handling foreclosures and other legal remedies pertaining to the pursuit of legal remedies in satisfaction of customer obligations to the bank; analyzing questions of fraud, forgery and sale of mortgaged chattels, prior to appropriate corrective action; and participating in a complete rewriting of personnel policies to assure compliance with standards of nondiscriminatory hiring and promotion. In the trust area, Undem listed the following activities: reviewing wills, trust agreements, escrow contracts, tax returns, and court orders (preparing some orders on occasion); reviewing documents pertaining to profit sharing, pension trusts, and employee stock ownership trusts; negotiating with the Internal Revenue Service with reference to valuations and other matters pertaining to estate and income tax determinations; preparation of accountings, review of investments and disbursements in accordance with the governing instruments and statutes; involvement in estate

and tax planning sessions with bank customers and their legal counsel; commenting on matters being handled by life insurance agents, accountants and attorneys for clients, as sought by them; review of documents pertaining to securities transfers for customers to determine conformance with requirements for transfer; and discussing the use of joint tenancy, tenancy in common, probate procedures, judgment liens, etc.

The bank's general counsel stated that he had almost daily contact with Undem in handling the legal affairs of the bank and that he served with Undem on the trust and audit committee of the board of directors of the bank. He stated that with some assistance from him, Undem had handled the drafting and marketing of capital debenture bonds, redrafting into legal forms such things as notes, mortgages, releases, and escrow agreements and had redrafted the employee pension plan and drafted an ESOT plan and caused the same to be qualified by the Internal Revenue Service. He also stated that Undem reorganized the trust department of the bank and revised many of its legal forms. He also stated that Undem had performed services to the customers of the bank in the fields of estate planning, trusts creation and trust and estate accounting, which usually involved the presence of general counsel, because Undem "was very careful not to engage in what would be deemed as the practice of law." The general counsel said that on many occasions he more or less "stood in" for Undem in handling and settling claims against the general contractor that constructed the bank's building, in negotiating contracts for the construction of the second phase of the new building, and in settling claims pertaining thereto. He stated that Undem's activities had been more nearly that "of counsellor in matters involving McIlroy Bank & Trust than purely an executive."

Another prominent Fayetteville attorney said exactly the same thing with reference to classifying Undem's activities. Still another stated that it was his opinion that "while Mr. Undem was not engaged in the public practice of law during this time — which he could not, and I am sure would not, do without the requisite license — and further was not exclusively engaged in the legal matters of his employer as house

counsel, that he was so substantially engaged in the handling of legal and quasi-legal matters relating to the administration of the Bank and its Trust Department that his activities could justifiably be regarded as a substantial and active practice of law."

One of the attorneys whose letter was presented with Undem's application which was reviewed by the board's chairman wrote another letter to the board. He stated four instances in which he said his law firm had dealt with Undem "in a law capacity equivalent to the practice of law over the past four years," and had relied upon Undem in a law decision-making and fact-gathering capacity. In the first instance, his firm and Undem held numerous discussions with regard to law and facts surrounding a law suit to be filed based upon a bizarre set of facts. The second occasion related to preparation of a will and trust agreement for a retired individual who was moving from another state. This lawyer said that the individual contacted Undem and that Undem, with the assistance of his law firm, was instrumental in approving and discussing a set of marital deduction wills and assisted in the probate of the estate of this man's wife and the establishment of certain charitable bequests subsequently made by this individual. He added that this gentleman has an agency account with the McIlroy Bank in excess of $1,000,-000. The third instance had to do with the sale of the farm of an elderly, physically infirm lady, in connection with which his law firm completed a plan for the best taxable advantage of the client, with Undem's assistance and active participation. The fourth was a similar instance in which Undem had participated with the firm in the establishment of an inter vivos trust. Other attorneys related that they had consulted with Undem and relied upon his advice in matters pertaining to corporate affairs, contracts for the purchase of real property, oil and gas rights, estate planning, collections, foreclosures, trust arrangements, contracts, property agreements and banking and investment procedures. One of the principal incorporating investors in Northwest National Bank stated that, after that bank had been chartered, following discussions with Undem of the "myriad of unprecedented legal and regulatory matters calling for prompt reaction," she and her husband were directed by Undem to the bank's legal

counsel for specific action and found that this attorney rarely differed with Undem's recommendations.

We find little, if anything, in the enumeration of Undem's activities that were outside the responsibilities and duties of the chief executive officer or the trust officer of a bank, but neither officer can be said to be engaged in the active practice of law. Undoubtedly, Undem's legal education materially helped him, as it has helped many bank officers and trust officers, to better perform these duties. Perhaps Undem's education and competence saved the bank considerable sums in attorney's fees, but he was not employed by the bank to engage in the active practice of the law.

Undem is emphatic in his statements that his time, when employed by McIlroy Bank & Trust, was spent substantially in activities that are customarily those in which a practicing attorney might be involved, and which are sufficient to meet the requirement of engaging in the active practice of law, adding that he has never appeared in court or received a legal fee. He is equally emphatic in his protestation that he has never engaged in the unauthorized practice of law. The circumstances that he did not appear in court and did not receive fees are facts totally beside the point. One can engage in the unauthorized practice of law without doing either, as we shall show.

The term "engaged in the active practice of law" may, indeed, escape precise definition, but it is not so vague as to be without limitations. It is quite true that the practice of law is not confined to services by an attorney in a court of justice; it also includes any service of a legal nature rendered outside of courts and unrelated to matters pending in the courts. *Arkansas Bar Ass'n.* v. *Block,* 230 Ark. 430, 323 S.W.2d 912; *Arkansas Bar Ass'n* v. *Union National Bank,* 224 Ark. 48, 273 S.W.2d 408. It is uniformly held that writing and interpreting wills, contracts, trust agreements, and the giving of legal advice in general constitute practicing law. *Arkansas Bar Ass'n* v. *Union National Bank,* supra. We held in the case just cited that a bank should properly be enjoined from engaging in the practice of law through two *licensed* attorneys employed by it in the following:

1. The drafting, re-drafting or modification of wills or other testamentary instruments.

2. The preparing of motions, pleadings or other instruments to be filed in court and the appearing in court on behalf of any beneficiary of a fiduciary estate, any co-trustee, co-executor, co-administrator or other person other than the defendant itself, either in its individual or in some fiduciary capacity.

3. The advising of any persons as to matters of law other than the defendant itself, either in its individual or in some fiduciary capacity.

4. The preparation of notices, motions, precedents for orders and all other pleadings and instruments which are required to be filed in probate court or chancery court or which become necessary and advisable in the administration of an estate or trust, whether the bank be acting as executor, administrator, guardian for an incompetent or otherwise in a trust relationship.

Conveyancing is also the practice of law. *Arkansas Bar Ass'n. v. Block,* supra. See also, *Beach Abstract & Guaranty Co.* v. *Bar Ass'n of Arkansas,* 230 Ark. 494, 326 S.W. 2d 900; *Creekmore* v. *Izard,* 236 Ark. 558, 367 S.W. 2d 419. In *Block,* we held that the preparation of certain instruments for others constituted the practice of law, even when the preparer had an interest in the transaction, but was not a party to it. Those instruments were:

Warranty Deeds; Disclaimer Deeds; Quitclaim Deeds; Joint Tenancy Deeds; Options; Easements; Loan Applications; Promissory Notes; Real Estate Mortgages; Deeds of Trust; Assignments of leases or rentals; Contracts of Sale of Real Estate; Releases and Satisfactions of Real Estate Mortgages; Agreements for the sale of real estate; Bills of Sale; Contracts of Sale; Mortgages; Pledges of personal property; Notices and Declarations of Forfeiture; Notices requiring strict compliance; Releases and discharges of mechanic's and materialmen's liens; Printed forms approved by at-

torneys, including the various forms furnished by title insurance companies to defendants for use by defendants as agents of title insurance companies; and acting as closing agents for mortgage loans and completing by filling in the blanks therein with factual data such instruments as are furnished to them and are necessary and incidental and ancillary to the closing of the transaction between the mortgagee for whom they act as agent and the mortgagor; Leases.

To this list, real estate title examination and curative work were added in *Beach Abstract & Guaranty Co.* v. *Bar Ass'n of Arkansas,* supra. In that case, we specifically approved the finding that these acts constituted the practice of law:

(a) Drafting and preparation of warranty deeds, disclaimer deeds and quitclaim deeds.

(b) Drafting and preparation of promissory notes, real estate mortgages, real estate purchase contracts and related instruments.

(c) Drafting and preparation of forms of agreement for the sale of real estate, chattels, and choses in action.

(d) Drafting and preparation of mortgages and pledges of personal property.

(e) Drafting and preparation of forms of conveyances naming husband and wife as grantees.

(f) Drafting and preparation of bills of assurance, dedication instruments, and tract and sub-division restrictions.

(g) Drafting and preparation of escrow instructions, setting forth agreements between buyers and sellers,and the rights and liabilities of buyers and sellers.

(h) Drafting and preparation of affidavits of completion of improvements, affidavits of marital status and heirship, and various and sundry additional forms of af-

fidavits and other instruments to remove clouds and perfect titles.

In neither *Arkansas Bar Ass'n* v. *Block*, supra, nor *Beach Abstract & Guaranty Co.* v. *Bar Ass'n of Arkansas*, supra, were any charges made for the services held to have been unauthorized practice of law.

These holdings were modified in *Creekmore* v. *Izard*, supra, to permit a real estate broker, when the person for whom he is acting has declined to employ a lawyer to prepare the necessary forms for the closing of a simple real estate transaction and has authorized the broker to do so, to fill in the blanks in simple printed forms which have been approved by a lawyer. These forms may be used by a broker only in connection with a transaction actually handled by him as a broker, when the transaction has arisen in the usual course of the broker's business and no charge is made for the service.

Undem could not engage in the practice of law as an agent or employee of the bank; he could only practice law by being licensed to practice in his own right. *Brinton* v. *City of Jonesboro*, 229 Ark. 944, 320 S.W.2d 272. The prohibition against engaging in the practice of law applies to all except those who are members of the Bar of the State of Arkansas. This is not only to insure professional competence, but is, in the public interest, to insure that the public be not led to rely upon the counseling, in matters of law, by those who are not answerable to the courts in this state for the manner in which they meet their professional obligations by compliance with standards of professional conduct imposed upon those engaging in the practice in this state. See *Beach Abstract & Guaranty Co.* v. *Bar Ass'n. of Arkansas*, supra.

It has been held that employment in work of a legal character (preparation of cases for trial in the United States Departments of Justice and the Interior and administrative-legal work as state director of the National Youth Administration for Connecticut) cannot be regarded as actual practice of law for the purpose of reciprocity admission. *Application of Dodd*, 132 Conn. 237, 43 A. 2d 224 (1945). This principle would apply to any purely legal services Un-

dem might have rendered to the bank.

It might be said that an inconsiderable number of the acts enumerated by Undem did constitute the practice of law, at least when they were performed for others than McIlroy Bank & Trust itself. We do not include consultation with licensed Arkansas attorneys in matters pertaining to estate planning, tax avoidance and business practices to be in that category. But whatever did not fall in that category was unauthorized practice of law. The active practice of law means that the legal activities of the applicant must have been pursued on a full-time basis and constituted his regular business. *Petition of Jackson,* 95 R.I. 393, 187 A.2d 536 (1963). Anyone who attempts to perform legal service for others in a state where he has not been first duly admitted to practice does so at his peril. *Rhode Island Bar Ass'n.* v. *Automobile Service Ass'n.,* 55 R.I. 122, 179 A. 139, 100 ALR 226 (1935). To permit one to qualify under the requirement that he be engaged in the actual practice of law upon the basis of legal activity principally performed in this state for a single corporate client-employer would be tantamount to affixing an ex post facto imprimatur of approval on what might be construed as the unauthorized practice of law, and is contrary to the policy expressed by our rule. See *In re Petition of Church,* 111 R.I. 425, 303 A.2d 758 (1973). It was never intended that the requirement of three years of active practice of law could be met by practice in Arkansas. This could only be done by engaging in the unauthorized practice of law. Such a construction of the rule would result in an absurdity.

Appellant's reliance upon *Application of Payne,* 430 P. 2d 566 (1967) is misplaced. In that case, the term "active practice of law" was not controlling. What was controlling was a definition of "active practice of law" which included rendering legal services to an agency, branch or department of a civil government in the United States or a state or territory of the United States, in an elective, appointive or employed capacity. It was held that the appellant qualified by reason of the fact that 65% of the services he had rendered in the employment of the United States Corps of Engineers were legal services in handling contract claims, tort claims, real estate transactions, condemnation cases, quiet title proceed-

ings and numerous other legal problems of a general and advisory nature.

Mr. Undem appears to have an excellent academic educational background. His character and reputation certainly meet our requirements. He simply is not eligible for admission to practice without examination. Admission to practice based upon certification by practicing lawyers of a candidate's ability is a relic of the distant past in Arkansas.

The action of the Board of Law Examiners is affirmed.

Mr. Justice Byrd concurs in the result.