The Honorable Jim Von Gremp State Representative Post Office Box 866 Bentonville, AR 72712-0866
Dear Representative Von Gremp:
This is in response to your request for an opinion concerning the propriety of various real estate transactions. Your first question is as follows:
 1. When a title insurance agent receives funds from the buyer or seller for use in the closing of a real estate transaction:
 a. Must the funds be placed into an escrow account or can they be placed in the general account of the title insurance agent?
 b. Can the title insurance agent collect interest on those funds and, if so, to whom does the interest belong?
My research has revealed no Arkansas statutes or case law addressing these issues. Furthermore, there is currently no entity that governs or regulates the practice of title insurance companies.[1] By "escrow" account, I will assume you are referring to a separate account maintained by the title company for the deposit of client funds as opposed to a general account for the payment of overhead expenses, etc. Although there is no law specifically pertaining to client funds maintained by title insurance companies, prudence would dictate that such funds be kept separate from general office funds in the manner, for example, required of attorneys. See Arkansas Model Rules of Professional Conduct, Rule1.15.
As to any interest generated from the deposit of closing funds, again, there is no law specifying that real estate transaction funds, in general, be maintained in either an interest or noninterest-bearing account.[2] Assuming the funds were placed in an interest-bearing account, it is my opinion that the question of who is entitled to the interest would be controlled by contract between the parties to the transaction and the title company. A buyer, for example, who has deposited earnest money may wish to stipulate that he receive any interest generated until the transaction is complete. Such an agreement would probably, however, need to be prepared or reviewed by an attorney (See Beach Abstract Guaranty Co. v. Bar Ass'n. of Arkansas,
230 Ark. 494, 326 S.W.2d 900 (1959) and discussion below.) It should also be noted that real estate brokers may choose to participate in the "Interest on Trust Accounts" program whereby the interest generated from real estate client monies are donated to non-profit organizations. See
A.C.A. § 17-35-601 through -603 (Cum. Supp. 1993). However, the statute mentions only real estate brokers, and it is unclear whether title insurance agents could also participate.
Your second question is as follows:
 2. Can a title insurance agent prepare deeds, mortgages, affidavits, and other similar documents in connection with a real estate transaction it is closing:
a) without the supervision of an attorney?
b) under the supervision of in-house counsel?
c) under the supervision of outside counsel?
 If so, can the title insurance agent charge document preparation fees for such services? If so, can the agent:
a) keep all of the fees?
b) share the fees with the in-house counsel?
c) share the fees with the outside counsel?
These questions raise the issue of whether the described transactions constitute the unauthorized practice of law. Arkansas Code Annotated § 16-22-21(d) (Repl. 1994) exempts corporations such as title insurance companies from the penalties associated with the unauthorized practice of law where the company is "lawfully engaged in the examination and insuring of titles to real property" or where it employs an attorney for its "own immediate affairs."
In its initital interpretation of this statute, the Arkansas Supreme Court held that the drafting and preparation of instruments by abstract and title companies, including deeds, mortgages, escrow agreements, etc, where done for the benefit of others, constituted the practice of law and was therefore prohibited. Beach Abstract Guaranty Co. v. Bar Ass'n. ofArkansas, supra. This holding was also applied to real estate brokers in a decision handed down the same day. See Arkansas Bar Ass'n. v. Block,230 Ark. 430, 323 S.W.2d 912 (1959).
The case of Creekmore v. Izard, 236 Ark. 558, 367 S.W.2d 419 (1963) later modified the holding in Block, to provide that a real estate broker may fill in the blanks of preprinted, standardized forms, which forms must be approved by a lawyer, with the understanding that the forms not be used for other than simple real estate transactions arising in the usual course of the real estate broker's business. No charge was permitted for filling in the forms. Id. Although Creekmore only specifically addressed real estate brokers, subsequent supreme court decisions characterized it as a modification of the holdings in both Block and and Beach. See St.Paul Fire Marine Ins. Co. v. Nicholson, 263 Ark. 694, 567 S.W.2d 107
(1978); Udem v. State Bd. of Examiners, 266 Ark. 693, 587 S.W.2d 563
(1979); Pope County Bar Ass'n. v. Suggs, 274 Ark. 250, 624 S.W.2d. 828 (1981).
In Suggs, supra, which remains the most recent decision on the issue, the supreme court upheld the chancellor's reliance on Creekmore, and approved the following restrictions for real estate brokers when using standard warranty deeds, quitclaim deeds, release deeds, bills of sale, lease agreements and mortgages with power of sale in "simple real estate transactions:"
 (1) that the persons for whom the broker is acting has declined to employ a lawyer to prepare the necessary instruments and has authorized the broker to do so;
 (2) that the forms are approved by a lawyer either before or after the blanks are filled in but prior to delivery to the person for whom the broker is acting;
 (3) that the forms shall not be used for other than simple real estate transactions which arise in the usual course of the broker's business;
 (4) that the forms shall be used only in connection with real estate transactions actually handled by such brokers as a broker;
(5) that the broker shall make no charge for filling in the blanks; and
 (6) that the broker shall not give advice or opinions as to the legal rights of the parties, as to the legal effects of instruments to accomplish specific purposes or as to the validity of title to real estate.
Suggs, 274 Ark. at 253, 624 S.W.2d at 626. Although the court declined to address its holding to abstract and title companies, it followed its previous holding in Creekmore, which decision, as discussed above, has also been applied to title insurance companies. It is thus my opinion that a title insurance agent would at least be held to the same restrictions as a real estate broker in preparing the documents you describe and any preparation of such documents would need to be supervised by an attorney as set forth in Suggs, above. As to whether the attorney is employed in-house or with an outside firm, again, I can find no statute or case law governing this issue. Thus, it is my opinion that either would be appropriate provided, of course, the attorney is properly licensed.
With regard to the charging of fees, in light of the prohibition against such charges expressed in Suggs and its predecessors, it is my opinion that a title insurance agent could not charge fees for simply filling in the blanks of a pre-printed form. Any document preparation entailing more than the use of a standardized form would need to be prepared by an attorney who could presumably charge reasonable fees in connection with this service. As to whether such fees could be shared between the title insurance agent and the attorney (either in-house or outside counsel), it is my opinion that this question is moot. Since I have opined that a title insurance agent cannot charge fees for the preparation of real estate documents, he or she therefore cannot share such fees with an attorney.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Sarah L. James.
Sincerely,
WINSTON BRYANT Attorney General
WB/SLJ:cyh
[1] Arkansas Code Annotated §§ 17-11-101 et seq. govern the practice of abstracting companies, but do not address the practice of title insurance.
[2] One exception is the purchase or reservation of time-share intervals, which requires that all deposits be placed in a noninterest-bearing escrow account by an independent bonding company or insured governmental agency. See A.C.A. § 18-14-407 (Cum. Supp. 1993). However, your questions do not appear to contemplate this type of transaction.