2011 Ark. 93.

**Stephen Toof BROWN, Mid–Central Plumbing Company, Inc., and John W. Rogers, Appellants,**

v.

**Brian KELTON, Appellee.**

No. 10–925.

Supreme Court of Arkansas.

March 3, 2011.

Barber, McCaskill, Jones & Hale, P.A., by: Scott M. Strauss, Little Rock, and Cynthia W. Kolb, for appellants John Rogers and Mid–Central Plumbing.

Huckabay, Munson, Rowlett & Moore, P.A., by: Shane Strabala, Little Rock, for appellant Stephen Toof Brown.

Chaney Law Firm, P.A., Arkadelphia, by: Don P. Chaney, Nathan P. Chaney, and S. Taylor Chaney, for appellee.

Wright, Lindsey & Jennings LLP, Little Rock, by: Gregory T. Jones; and Akerman Senterfitt, by: Katherine E. Giddings and Kristen M. Fiore, for amici curiae American Insurance Association, The Property Casualty Insurers Association of America, and the Association of Corporate Counsel.

PAUL E. DANIELSON, Justice.

Appellants Mid–Central Plumbing Company, Inc., and John W. Rogers, Mid–Central's sole shareholder, along with separate appellant Stephen Toof Brown, bring this interlocutory appeal from an order of the Pulaski County Circuit Court disqualifying Brown from serving as the attorney for Mid–Central and Rogers in the case filed against them by appellee Brian Kelton. Appellants argue that the circuit court erred in disqualifying Brown because: (1) Ark.Code Ann. § 16–22–211 (Supp.2009) does not prohibit Farmer's Insurance Exchange from using an employee to defend its insureds; (2) alternatively, the circuit court erred by not holding Ark. Code Ann. § 16–22–211 unconstitutional for intruding on this court's exclusive authority to regulate the practice of law; (3) Kelton had no standing to object to an alleged conflict of interest; (4) it was not a conflict of interest for Brown to serve as the attorney for Mid–Central and Rogers; and (5) Mid–Central and Rogers gave proper informed consent to be represented by Farmer's Insurance Exchange's staff counsel. Brown also argues that he did not breach his duty to preserve Mid–Central's confidences. Mid–Central and Rogers additionally argue that the circuit court improperly disregarded their fundamental right to be represented by their chosen counsel. We affirm the circuit court's order disqualifying Brown in the instant case.

This case arose from a car accident in which Kelton's vehicle was struck by a vehicle owned by Mid–Central. Kelton filed suit against Mid–Central and Rogers alleging damages from the collision. Mid–Central and Rogers were insured by Truck Insurance Exchange ("TEI") for $1,000,000, and TEI was reinsured by Farmer's Insurance Exchange ("FIE").

Approximately three months after an answer was filed on behalf of Mid–Central and Rogers, their attorney filed a motion for substitution, seeking to name Stephen Brown, an attorney employed by FIE, as the new attorney on the case. The circuit court entered an order substituting counsel. However, Kelton filed a response in opposition to the motion for substitution shortly thereafter. The circuit court held a hearing and the parties agreed that because the response in opposition had been filed after the motion to substitute had already been granted, it would be treated as a motion to disqualify.

After the hearing, the circuit court found that Brown's representation of Mid–Central and Rogers would have constituted the unauthorized practice of law by FIE pursuant to Ark.Code Ann. § 16–22–211; that a conflict of interest existed for Brown because his undivided duty of loyalty and confidentiality would have been owed to Mid–Central and Rogers, not to the insurance company that employed him; and that no effective waiver of the inherent conflict had or could have taken place. Accordingly, the circuit court disqualified Brown from further participation in the case on behalf of FIE's insureds. The circuit court entered its order on June 2, 2010. This interlocutory appeal followed, and we now turn to the merits of the appeal.

Appellants first argue that Ark.Code Ann. § 16–22–211 does not prohibit an insurance carrier from assigning the defense of an insured's lawsuit to in-house counsel and that such is true in a majority of other jurisdictions as well. Kelton responds that the circuit court's application of section 16–22–211 was correct and that using in-house counsel to represent an insured equates to the insurance company unlawfully practicing law.

We review statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *See Dachs v. Hendrix,* 2009 Ark. 542, 354 S.W.3d 95; *Osborn v. Bryant,* 2009 Ark. 358, 324 S.W.3d 687. Our rules of statutory construction are well settled:

> The basic rule of statutory construction is to give effect to the intent of the legislature. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible.

*Dachs,* 2009 Ark. 542, at 7, 354 S.W.3d 95, at 100 (quoting *City of Little Rock v. Rhee,* 375 Ark. 491, 495, 292 S.W.3d 292, 294 (2009)).

Section 16–22–211 states, in relevant part:

> (a) It shall be unlawful for any corporation or voluntary association to practice or appear as an attorney at law for any person in any court in this state or before any judicial body, to make it a business to practice as an attorney at law for any person in any of the courts, to hold itself out to the public as being entitled to practice law, to tender or furnish legal services or advice, to furnish attorneys or counsel, to render legal services of any kind in actions or proceedings of any nature or in any other way or manner, or in any other manner to assume to be entitled to practice law or to assume or advertise the title of lawyer or attorney, attorney at law, or equivalent terms in any language in such a manner as to convey the impression that it is entitled to practice law or to furnish legal advice, service, or counsel or to advertise that either alone or together with or by or through any person, whether a duly and regularly admitted attorney at law or not, it has, owns, conducts, or maintains a law office or any office for the practice of law or for furnishing legal advice, services, or counsel.
>
> . . . .
>
> (d) This section shall not apply to a corporation or voluntary association lawfully engaged in the examination and insuring of titles to real property, nor shall it prohibit a corporation or a voluntary association from employing an attorney or attorneys in and about its own immediate affairs or in any litigation to which it is or may become a party.

Ark.Code Ann. § 16–22–211(a),(d) (Supp. 2009).

Appellants argue that FIE falls into the exception created by subsection (d) because the insured's lawsuit is a matter that is "in and about its own immediate affairs." However, they attempt to de-emphasize the language that follows. The exception created is two-fold. The plain language of the statute allows a corporation to employ an attorney in two scenarios: (1) for matters "in and about its own immediate affairs"; *"or* (2) *in any litigation to which it is or may become a party."* *Id.* (emphasis and numeral added).

Appellants argue that the language of section 16–22–211 should not be interpreted as creating disjunctive alternatives. However, "[i]n its ordinary sense, the word 'or' is a disjunctive particle that marks an alternative, generally corresponding to 'either,' as 'either this or that'; it is a connective that marks an alternative." *McCoy v. Walker,* 317 Ark. 86, 89, 876 S.W.2d 252, 254 (1994) (quoting *Beasley v. Parnell,* 177 Ark. 912, 918, 9 S.W.2d 10, 12

(1928)). Additionally, were we to hold that "in and about its own immediate affairs" includes litigation to which it is not a party, but to which it is closely connected or has an interest in the outcome, the language following would be superfluous. Obviously, litigation to which it is a party or could become a party would then be included in the first exception. As noted, "[w]e construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible." *Dachs, supra.*

In the instant case, it is undisputed that FIE is not a party and will not become a party to the underlying lawsuit. Therefore, it was prohibited by Ark.Code Ann. § 16–22–211 from assigning appellant Brown, one of its in-house counsel, to defend the insureds in the litigation.

■ Appellants next argue that Ark. Code Ann. § 16–22–211 is unconstitutional because the statute conflicts with the exclusive power to regulate the practice of law vested on this court by amendment 28 of the Arkansas Constitution. Kelton avers that this statute, much like others upheld by this court, is simply an aid in regulating the practice of law and is not in derogation of it.

Amendment 28 of the Arkansas Constitution provides that "[t]he Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law," and this court has recognized that amendment 28 "put to rest for all time any possible question about the power of the courts to regulate the practice of law in the state." *McKenzie ₆v. Burris,* 255 Ark. 330, 341, 500 S.W.2d 357, 364 (1973). However, as even the appellants recognize, this court considered and rejected the idea of a possible conflict between amendment 28 and the legislative act prohibiting corporations from practicing law.

*See Arkansas Bar Ass'n v. Union Nat'l Bank of Little Rock,* 224 Ark. 48, 273 S.W.2d 408 (1954). While facts of that case differed, this court observed:

> In many jurisdictions, as in this state, the judiciary has on occasions apparently given approval to certain enactments by the legislative body, but these enactments are considered to be in aid of the judicial prerogative to regulate the practice of law and not to be in derogation thereof.

*Id.* at 54, 273 S.W.2d at 412.

■ The approach taken by this court in the *Union National Bank* case has since been utilized. *See McKenzie, supra.* We have recognized that "[s]tatutes which provide a penalty for unauthorized practice of law by a nonresident of the forum state have been held to be cumulative to the powers of the courts to punish." *McKenzie,* 255 Ark. at 342, 500 S.W.2d at 365. Statutes relating to the practice of law are merely in aid of, but do not supersede or detract from the power of the judicial department to define, regulate, and control the practice of law. *See id.* The legislative branch may not, in any way, hinder, interfere with, restrict, or frustrate the powers of the court. *See id.* Moreover, we have "chosen to recognize and apply certain statutes which are not necessarily inconsistent with, or repugnant to, court rules, and do not hinder, interfere with, frustrate, pre-empt or usurp judicial powers, at least when the statutes were, at the time of enactment, clearly within the province of the legislative branch, ₇and when the courts have not acted in the particular matter covered by the statute." *Id.* at 343, 500 S.W.2d at 365.

While there is no question that we hold the power to define, regulate, and control the practice of law, section 16–22–211 reflects the consensus of this court as found

in prior case law and implied by our court rules. We have observed that "[c]orporations shall not practice law." *Union Nat'l Bank,* 224 Ark. at 53, 273 S.W.2d at 411 (1954) (quoting *People ex rel. Comm. on Grievances of Colorado Bar Ass'n v. Denver Clearing House Banks,* 99 Colo. 50, 59 P.2d 468, 470 (1936)). Additionally, Rule 1.7 of the Arkansas Rules of Professional Conduct sets forth the general principle that an attorney may not represent a client if the representation involves a concurrent conflict of interest. Upon consideration of public policy and recognizing the inability of any person to faithfully serve two masters, we hold that the statute, which prohibits corporations, including insurance companies, from practicing law on behalf of a third party, is constitutional.

 Appellants additionally argue that Kelton, as their adversary, had no standing to object to Brown's representation of Mid–Central and Rogers. Kelton responds that a litigant does have standing to question his opponent's authority to practice law and argues that the circuit court was correct in finding that the rules of professional conduct also allowed for the challenge. The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. *See McLane S., Inc. v. Arkansas Tobacco Control Bd.,* 2010 ₈Ark. 498, 375 S.W.3d 628.

This court has previously held that an opponent, as a litigant, had standing to question their opponent's authority to practice law. *See Davis v. University of Arkansas Med. Ctr. & Collection Serv. Inc.,* 262 Ark. 587, 559 S.W.2d 159 (1977); *see also, e.g., McKenzie, supra.* Therefore, we affirm the circuit court's finding that Kelton had standing to challenge Brown's representation of Mid–Central and Rogers.

 Mid–Central and Rogers also allege that the circuit court improperly disregarded their fundamental right to be represented by their chosen counsel and that they gave proper informed consent to the representation. Appellants' fundamental-right argument was not raised and developed before the circuit court. It is well-settled that this court will not address an argument raised for the first time on appeal, even a constitutional argument. *See Burdine v. Arkansas Dep't of Fin. & Admin.,* 2010 Ark. 455, 379 S.W.3d 476. While Mid–Central and Rogers allege that they gave the proper informed consent to be represented by Brown, even had they given such consent, a lawyer may not represent the client if that representation is prohibited by law. *See* Ark. R. Prof'l Conduct 1.7(b)(2) (2010).

 Because we hold that Ark.Code Ann. § 16–22–211 prohibited Brown from representing Mid–Central and Rogers, and in light of our decision to hold the statute constitutional, any decision on the remaining arguments presented on appeal—that there was not an inappropriate conflict and that no breach of duty to preserve Mid–Central and Roger's confidences had occurred—would be purely advisory. It is well-settled that we will not issue ₉an advisory opinion. *See Jewell v. Fletcher,* 2010 Ark. 195, 377 S.W.3d 176.

Affirmed.

HANNAH, C.J., and BROWN and BAKER, JJ., concur.

JIM HANNAH, Chief Justice, concurring.

I concur in the result reached by the majority, but I write separately to set out the analysis by which I reach that same result. Brown correctly argues that Arkansas Code Annotated section 16–22–211 (Supp.2009) "cannot control the outcome of

this case because the statute intrudes on this court's exclusive power." A statute, being an enactment of the legislative branch, may not control what is within the exclusive authority of the judicial branch. As the highest court in the judicial branch of government, this court holds exclusive authority over the regulation of the practice of law.[1]

The authority to regulate the practice of law arises from the Arkansas Constitution and the common law. Under amendment 28 to the Arkansas Constitution, this court "shall make rules regulating the practice of law." "The power to regulate the practice of law is also an inherent power of the courts." *Ligon v. Stilley,* 2010 Ark. 418, at 3, 371 S.W.3d 615, 623.

The circuit court decided this case largely on an analysis of section 16–22–211, and while this was in error, the circuit court nonetheless reached the right result. "It is axiomatic that this court can affirm a circuit court if the right result is reached even if it is for a different reason." *Wade v. Ferguson,* 2009 Ark. 618, at 4, 2009 WL 4723356. Section 16–22–211 should not control or be the focus of this court's analysis. Rather the analysis should be based on this court's precedent and analysis under our authority to regulate the practice of law.

An attorney may not serve two masters. If an attorney is an employee of the insurance carrier responsible for paying the legal fees, costs, and any settlement or judgment of an insured in a lawsuit, then that attorney may not represent the insured in that lawsuit. The reason is simple. Such an attorney's loyalties are divided between the insured, who does not pay the attorney, and the insurance carrier employer, which does. This conflict is inherent in every case where a company lawyer attempts to represent the legal interests of his or her employer's clients or customers. The attorney-client relationship "cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation and not to the directions of the client." *See Rhode Island Bar Ass'n v. Auto Serv. Ass'n,* 55 R.I. 122, 179 A. 139, 145 (1935). Further, an insurance carrier, for example, is a business and is naturally concerned with profits and retaining as much of the insurance premiums as possible, which translates in a lawsuit into a desire to pay as little in fees, costs, and judgments as possible. The insured's interests are not the same as the insurance company's, and those interests may vary greatly. For example, an insured may be concerned about the effect a settlement may have on his or her business reputation, and may wish to proceed to trial, whereas an insurance carrier may determine it is in its best interest to settle the case and cut the costs.

In *Arkansas Bar Ass'n v. Block,* 230 Ark. 430, 435, 323 S.W.2d 912, 914 (1959) (modified by *Creekmore v. Izard,* 236 Ark. 558, 565, 367 S.W.2d 419, 423 (1963) (*Block* modified to provide that a real estate broker may be permitted to fill in blanks in simple standardized real estate forms)), this court stated that a corporation may not practice law, which would be the case

---

1. It is true that this court has occasionally referred to section 16–22–211 (formerly Arkansas Statutes Annotated section 25–205) in cases discussing the regulation of the practice of law. However, in such cases we have noted that despite our reference to the statute, it is solely within the judicial prerogative to regulate the practice of law. *See Ark. Bar* *Ass'n v. Union Nat'l Bank,* 224 Ark. 48, 54, 273 S.W.2d 408, 412 (1954). We are not bound by section 16–22–211 because section 16–22–211 violates the separation-of-powers doctrine. The law would be clarified if this court distances itself from any perceived reliance on section 16–22–211. The statute should be declared unconstitutional.

if its attorneys were representing the corporation's clients in legal matters.[2] According to the analysis in *Block*, "[a]rtificial creations," such as corporations cannot provide the confidential and undivided allegiance due a client by an attorney. *Id.*, 434 S.W.2d at 915.

> The relation of an attorney to his client is pre-eminently confidential. It demands on the part of the attorney undivided allegiance, a conspicuous degree of faithfulness and $l_{12}$disinterestedness, absolute integrity and utter renunciation of every personal advantage conflicting in any way directly or indirectly with the interest of his client.

*Id.* at 435, 434 S.W.2d at 915 (quoting *State Bar Ass'n of Connecticut v. Connecticut Bank & Trust Co.*, 145 Conn. 222, 140 A.2d 863, 870 (1958)). Where an attorney is called on to represent the clients of his or her employer, a conflict of interest arises between the duty owed by the attorney to his or her employer and the duty that attorney owes to the client. The conflict is not resolved by consent of the client because the attorney in that setting cannot provide the required undivided allegiance to his or her employer's clients. Based on our precedent and our authority to regulate the practice of law, I believe that the circuit court correctly disqualified Brown.

BROWN and BAKER, JJ., join.

---

**2.** In *Creekmore v. Izard*, 236 Ark. 558, 565, 367 S.W.2d 419, 423 (1963), this court stated the following:
Therefore we are ruling that the decision in *Ark. Bar Ass'n v. Block*, 230 Ark. 430, 323 S.W.2d 912, should be modified to provide that a real estate broker, when the person for whom he is acting has declined to employ a lawyer to prepare the necessary instruments and has authorized the real estate broker to do so, may be permitted to fill in the blanks in simple printed standardized real estate forms, which forms must be approved by a lawyer; it being understood that these forms shall not be used for other than simple real estate transactions which arise in the usual course of the broker's business and that such forms shall be used only in connection with real estate transactions actually handled by such brokers as a broker and then without charge for the simple service of filling in the blanks.