2010 Ark. 455

**Troy BURDINE, Appellant**

v.

**ARKANSAS DEPARTMENT OF FINANCE & ADMINISTRATION; Richard Weiss, Director, Appellee.**

No. 10–275.

Supreme Court of Arkansas.

Nov. 18, 2010.

Gordon, Caruth, and Virden, P.L.C., Morrilton, by: Bart F. Virden, for appellant.

Office of Revenue Legal Counsel, by: Paul M. Gehring, for appellees.

PAUL E. DANIELSON, Justice.

Appellant Troy Burdine appeals from the circuit court's order affirming appellee Arkansas Department of Finance and Administration's Office of Driver Services's (DFA) decision disqualifying his commercial driver's license (CDL). He asserts that the circuit court erred in so affirming. We affirm the circuit court's order.

According to the record, Burdine was arrested in Missouri on or about July 1, 2007, and charged with driving while intoxicated. That charge was nolle prossed, and on October 23, 2007, the Missouri Department of Revenue (MDR) held an administrative hearing, which resulted in a suspension of Burdine's driving privileges. In its findings of fact and conclusions of law, the MDR found, in pertinent part:

2. The sole issue to be decided is whether by a preponderance of the evidence, the person was driving a vehicle pursuant to the circumstances set out in Section 302.505, RSMo.

. . . .

4. Based upon the preponderance of the evidence presented at the administrative hearing, Petitioner is found to have been arrested/stopped upon probable cause to believe Petitioner was driving a motor vehicle while the alcohol concentration in the blood was at or above the limit required by Section 302.505, RSMo, or if under age twenty-one, was stopped while operating a motor vehicle with a blood alcohol content of .02% or more by weight, and the Notice of Suspension/Revocation was therefore properly issued to or served

upon Petitioner pursuant to Section 302.515 or 302.520, RSMo.

5. Administrative suspension or revocation of Petitioner's privilege to drive in the State of Missouri is required by Sections 302.505 and 302.525, RSMo.[1]

Burdine subsequently moved to Arkansas and requested that his CDL be transferred from Oklahoma. On February 3, 2009, DFA notified Burdine that his commercial driving privilege would be disqualified on February 17, 2009, "for serious traffic violation(s)." It further notified him that a hearing had been scheduled for him on the same date. Subsequent notifications were also sent, and, eventually, a hearing was held on April 21, 2009. A hearing summary was then issued, which stated, in pertinent part:

STATUTE NUMBER AND CONCLUSION OF LAW:

§ 27–23–112 requires disqualification of commercial driving privilege for 1 year for a first offense of DWI, CMV DWI @.04, or refuse test IAW § 27–23–112(b)(1)(B) and IAW § 27–23–103(9). "Conviction" means an unvacated adjudication of guilt, a determination that a person has violated or failed to comply with the law in a court of original jurisdiction or by an authorized administrative tribunal.

DECISION OF HEARING OFFICER:

This is a contested hearing. Atty Bickett states that there is no conviction on licensee's driving record. The DWI in Missouri was dismissed by prosecutor nolle pros. The Office states the Missouri Dept. of Rev constitutes a "conviction" of the Missouri DUI offense for the purposes of disq. of licensee's commercial driving privileges and because

Missouri did not take action on the CDL, AR must impose the disq. pursuant to § 384.206 & § 384.231 of the Federal Motor Carrier Safety Regulations. Atty Bickett said the interpretation of the fed codes as listed above are misinterpreted in whole or by part. Atty Bickett states that Missouri did in fact impose a restriction of licensee's driving privileges therefore Arkansas must give full faith and credit to |₃Missouri's decisions. Under the codes listed above, further reading of the codes does not disqualify licensee. The Office will uphold the disqualification.

REINSTATEMENT REQUIREMENT:

May surrender CDL and downgrade to an NCL. CDL is disqualified from 04/21/09 to 04/21/10. Must retest to qualify for new CDL.

On April 21, 2009, Burdine filed a petition for de novo review in the circuit court. In it, Burdine asserted that the State could not meet its burden of proving that his driving privileges should be disqualified as a result of his arrest for DWI, which charges were dismissed with prejudice, and prayed that his CDL privileges be reinstated during the pendency of the circuit court's review.[2] DFA answered that the dismissal of Burdine's criminal charge was immaterial due to the fact that Missouri law provided that the disposition of criminal charges shall not affect the suspension or revocation of an individual's driver's license. It further contended that its hearing officer correctly determined that disqualification of Burdine's driving privileges was required.

A hearing was held on Burdine's petition on November 3, 2009, at which time the

---

1. Burdine did not appeal the administrative decision to the Missouri circuit court.

2. The circuit court did order a reinstatement of Burdine's commercial driving privileges and stayed his disqualification that same day.

circuit court heard arguments from both parties and ruled orally from the bench:

The record is also deficient as to whether or not Missouri told Oklahoma of the administrative tribunal's findings of fact and conclusions of law suspending the plaintiff's driver's license from November 14th, 2007 to February 12th, 2008. It is the finding of this Court that the Missouri agency was an authorized administrative tribunal, and that its finding is tantamount to a conviction.

Oklahoma did not suspend the plaintiff's commercial driver's license as man—mandated by the *Code of Federal Regulation*. When the plaintiff began the renewal process in Arkansas in January 2009, all of the hands shook and the defendant's convict—the₄ plaintiff's conviction in Missouri became known. Arkansas suspended his driver's license. That suspension was reduced to the Driver Control Hearing Summary, Plaintiff's Exhibit 1.

It is the finding of this Court that the Department of Finance and Administration Office of Driver Services' suspension is to be upheld for a period of nine months from the entry of an order in this matter, giving the plaintiff credit for the uncontroverted suspension he experienced from November 14th, 2007 to February 12th, 2008.

On November 30, 2009, the circuit court issued its order, in which it found, in pertinent part:

3. As a result of Petitioner's July 1, 2007 arrest for DWI, in an October 30, 2007 administrative proceeding before the Missouri Department of Revenue (MDOR), the MDOR suspended Petitioner's driving privileges for a period of three (3) months. The October 30, 2007 administrative decision constitutes a "conviction" of his July 1, 2007 arrest for DWI for purposes of Petitioner's CDL.

Neither the MDOR or the State of Oklahoma disqualified Petitioner's CDL.

4. Petitioner transferred his CDL to the State of Arkansas on January 22, 2009. Respondent searched Petitioner's driving record and determined neither the MDOR or the State of Oklahoma disqualified Petitioner's CDL as a result of his July 1, 2007 arrest for DWI. Pursuant to 49 C.F.R. §§ 384.206 and 384.231, Respondent notified Petitioner that his CDL would be disqualified by Respondent for one (1) year.

5. On April 21, 2009, Respondent's Office of Driver Control issued its administrative decision disqualifying Petitioner's CDL for one (1) year.

6. This Court hereby affirms the April 21, 2009 decision of Respondent's Office of Driver Control disqualifying Petitioner's CDL. Petitioner's commercial driver's license (CDL) shall be disqualified for one (1) year, with credit for three (3) months already served. The disqualification of Petitioner's CDL shall commence upon the filing of this Order with the Circuit Clerk.

The circuit court also entered an order staying Burdine's disqualification pending any appeal. Burdine filed a timely notice of appeal and now appeals.

In this appeal, Burdine challenges the circuit court's order affirming the disqualification of his CDL by DFA's Office of Driver Services. Specifically, Burdine argues that the suspension of his driver's license in Missouri was not a conviction for driving while ₅intoxicated warranting disqualification. He contends that the MDR's administrative finding of DUI was not a conviction under Arkansas law, and, he asserts, the Federal Motor Carrier Safety Regulations require a one-year suspension only when a person is convicted of driving under the influence of alcohol as defined by state law. In addition, he

maintains that any consideration of the MDR administrative finding as a conviction was a violation of his due-process rights. DFA avers that Burdine's CDL was properly disqualified in accordance with federal regulations. It maintains that, upon receipt of Burdine's application for transfer of his CDL, it requested his record in accord with 49 C.F.R. § 384.206(a)(2) and discovered the Missouri administrative DUI. It urges that in order to comply with federal law, it was required to disqualify Burdine's CDL due to his DUI conviction, no previous disqualification for the conviction had occurred. It further points out that Arkansas statutory law does not control, as it imposed a federally mandated disqualification comporting with federal regulations.

■ Burdine appealed to the circuit court pursuant to Ark.Code Ann. § 27–16–913(a) (Repl.2008), which permits that

[a]ny person denied a license or whose license has been suspended or revoked by the Office of Driver Services, within thirty (30) days of receipt of the decision by the office to deny, suspend, or revoke the license, may file a de novo petition of review in the Pulaski County Circuit Court or the circuit court in the county where the licensee or interested person resides.

Pursuant to the statute, the circuit court is vested with jurisdiction to determine whether the petitioner is entitled to a license or whether the decision of the hearing officer should be affirmed, modified, or reversed. *See* Ark.Code Ann. § 27–16–913(d). We must review the ₆circuit

court's order and determine whether the circuit court's findings were clearly erroneous. *See* Ark. R. Civ. P. 52(a) (2010). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court based on the entire evidence is left with a firm conviction that a mistake has been committed. *See PH, LLC v. City of Conway,* 2009 Ark. 504, 344 S.W.3d 660. Disputed facts and determinations of credibility are within the province of the fact-finder. *See id.*

Arkansas Code Annotated § 27–23–108(a)(1)(A) (Repl.2008) provides that

[t]*o the extent permitted by federal law and regulation,* a person may be issued a commercial driver license only if that person has:

(i) Passed a knowledge and skills test for driving a commercial motor vehicle that complies with minimum federal standards established by federal regulation enumerated in 49 C.F.R., part 383, sub-parts G. and H.; and

(ii) *Satisfied all other requirements imposed by state or federal law or regulation.*

(Emphasis added.) Part 384 of Title 49 of the *Code of Federal Regulations* governs state compliance with commercial driver's license programs. Its purpose is "to ensure that the States comply" with the Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. § 31311(a), and the part includes "the minimum standards for the actions States must take to be in substantial compliance" with the requirements of § 31311(a). 49 C.F.R. § 384.101(a, b(1)).[3]

**3.** The State of Arkansas has recognized and implemented the Commercial Motor Vehicle Safety Act of 1986 through the enactment of the Arkansas Uniform Commercial Driver License Act. *See* Ark.Code Ann. §§ 27–23–101—27–23–126 (Repl.2008 & Supp.2009). In addition, "[a]ll rules and safety regulations now or hereafter prescribed and adopted by the

U.S. Department of Transportation, Federal Highway Administration, applicable to motor vehicles under the Federal Motor Carrier Safety Regulations as found in 49 C.F.R. Parts 383 through 399, not in conflict with the laws of the State of Arkansas," were adopted and prescribed "as the safety rules and regulations applicable to the interstate and intra-

The rules in the part apply to all states. *See* 49 C.F.R. § 384.103.

Pursuant to 49 C.F.R. § 384.206(a)(2), an issuing state, prior to the initial or transfer issuance of a CDL, must require an applicant to provide the names of all states in which the applicant was previously licensed and request a complete driver record from all states in which the applicant was licensed within the previous ten years. In the event a state obtains adverse information regarding the applicant, the state must "promptly implement the disqualifications." 49 C.F.R. § 384.206(b)(2). DFA did so in the instant case.

In this case, the search of Burdine's driver records by DFA revealed the administrative DUI from Missouri, but no disqualification record. Under 49 C.F.R. § 384.215, a state must disqualify from operating a commercial motor vehicle for no less than one year each person who is convicted of a disqualifying offense, as specified in 49 C.F.R. § 383.51. Table 1 of § 383.51 provides that if a driver operates a motor vehicle and is convicted of "[b]eing under the influence of alcohol as prescribed by State law," the CDL holder must be disqualified from operating a commercial motor vehicle for "1 year" for a first conviction "while operating a non-CMV."

While Burdine argues that his administrative DUI did not constitute a conviction, his argument is without merit, as 49 C.F.R. § 383.5 defines "conviction" as

an unvacated adjudication of guilt, or a determination that a person has violated or failed to comply with the law in a court of original jurisdiction or by an authorized administrative tribunal, an unvacated forfeiture of bail or collateral deposited to secure the person's appearance in court, a plea of guilty or nolo contendere accepted by the court, the payment of a fine or court cost, or violation of a condition of release without bail, regardless of whether or not the penalty is rebated, suspended, or probated.

Here, the finding by the MDR, an administrative tribunal, was that Burdine had violated or failed to comply with Missouri law; thus, the finding was a conviction for purposes of the federal regulations.[4] According to the records obtained by DFA, no disqualification had been previously implemented for Burdine's DUI conviction by the MDR, as required by the foregoing

---

state operations of motor vehicles under the jurisdiction of" the Arkansas Highway and Transportation Commission. 001–00–004 Ark. Code R. 17.1 (Weil 2000).

4. Burdine argues in his brief to this court that Arkansas law does not recognize an administrative suspension as a conviction for the criminal offense of driving while intoxicated. However, while not pertinent to our analysis, we note that for purposes of the Arkansas Uniform Commercial Driver License Act,

"[c]onviction" or "convicted" means an unvacated adjudication of guilt, a determination that a person has violated or failed to comply with the law in a court of original jurisdiction or by an authorized administrative tribunal, an unvacated forfeiture of bail or collateral deposited to secure the per-

son's appearance in court, a plea of guilty or nolo contendere accepted by the court, the payment of a fine, court cost, or court order, or violation of a condition of release without bail, regardless of whether or not the penalty was rebated, suspended, or prorated.

Ark.Code Ann. § 27–23–103(9) (Supp.2009). We further note that the Missouri Supreme Court has also held, for purposes of Missouri's Commercial Driver's License Act, that the suspension of one's base driver's license constitutes a conviction for driving under the influence of alcohol, which is a first violation meriting disqualification of a person's commercial driver's privilege for a period of not less than one year. *See Strup v. Dir. of Revenue*, 311 S.W.3d 793 (Mo.2010).

regulations. For that reason, DFA disqualified Burdine's CDL for one year, as required by the federal regulations recognized and adopted by this state and set forth above. The circuit court so found, and we cannot say that it clearly erred in doing so.

Pursuant to Ark.Code Ann. § 27–23–108(c) (Repl.2008),

[a] commercial driver license, special commercial license, restricted commercial license, temporary commercial license, provisional commercial license, or commercial driver instruction permit may not be issued to a person while the person is subject to a disqualification from driving a commercial motor vehicle, or while the person's driver license is suspended, revoked, or cancelled in any state; nor may a commercial driver license be issued to a person who has a commercial driver license or any other driver license issued by any other state unless the person first surrenders all such licenses, which must be returned to the issuing state(s) for cancellation.

Because the record demonstrates that Burdine was subject to a disqualification from driving a commercial motor vehicle, it is clear to this court that the circuit court did not err in finding that the DFA properly disqualified Burdine's CDL.

While Burdine also appears to raise a due-process argument, our review of the record reveals that he failed to raise and develop that argument before the circuit court. It is well settled that this court will not address an argument raised for the first time on appeal, even a constitutional argument. *See Davis v. State*, 2009 Ark. 478, 348 S.W.3d 553; *Hatchell v. Wren*, 363 Ark. 107, 211 S.W.3d 516 (2005). For all of the foregoing reasons, we affirm the circuit court's order.

Affirmed.

WILLS, J., concurs.

WILLS, J., concurring.

The majority attempts to resolve this controversy by reference to federal law alone. I cannot agree with that analysis because the federal regulations require reference to disqualifying offenses "as prescribed by state law." In my view, the majority implicitly relies on Missouri law to determine this controversy. I believe that the application of Arkansas law would require reversal of the circuit court's decision, but we have not been presented with any sufficient basis to apply Arkansas law to this controversy. I therefore reluctantly concur in the opinion.

The majority concludes that the Missouri Department of Revenue (MDR) found that Burdine violated or failed to comply with Missouri law and that such finding constituted a conviction. ("The finding by the MDR, an administrative tribunal, was that Burdine had violated or failed to comply with Missouri law.") The actual finding that the MDR made, however, was that Burdine was "found to have been arrested/stopped upon probable cause to believe [he] was driving a motor vehicle while the alcohol concentration in the blood was at or above [the limit required by Missouri law]." The Department then stated merely that "[a]dministrative suspension or revocation ... is required by Sections 302.505 and 302.520 RSMo." I cannot agree that the finding of the MDR, standing alone, evidences a violation of Missouri law or that it is "tantamount" to a conviction of a "disqualifying offense." Deeper reference to federal law and the laws of Missouri is necessary to reach that conclusion.

As an initial matter, the pertinent federal regulations require a state to disqualify a person who is "convicted," as defined in 49 C.F.R. § 383.5, of a "disqualifying of-

fense" specified in 49 C.F.R. § 383.51. *See* 49 C.F.R. § 384.215. Section 383.51 sets out the disqualification periods for various offenses, including "being under the influence of alcohol *as prescribed by state law.*" 49 C.F.R. § 383.51, Table 1 (emphasis added). The statute is silent, however, as to *which* state's law governs and prescribes the disqualifying offense where the conduct occurs in one state and the licensure action occurs in another state.

The conduct of being stopped on probable cause for driving under the influence and a later suspension based on that conduct, standing alone, constitutes a disqualifying event under Missouri law, *see* Mo. Rev.Stat. § 302.755.1(1); Mo.Rev.Stat. § 302.525.3,[1] and is defined in Missouri's Commercial Driver's License Act as "driving under the influence of alcohol." This rule is illustrated in *Strup v. Director of Revenue,* 311 S.W.3d 793 (Mo.2010), cited by the majority. Missouri's commercial driver's license (CDL) law defines "driving under the influence of alcohol" as including "[h]aving any state, county, or municipal alcohol-related enforcement contact" pursuant to subsection 3 of section 302.505, *see* Mo.Rev.Stat. § 302.700(13)(e),[2] which includes "any suspension or revocation under sections 302.500 to 302.540." *See also Baber v. Dir. of Revenue,* 317 S.W.3d 680 (Mo.Ct.App.2010).

This is not the law in Arkansas. Arkansas's CDL law defines "driving a commercial motor vehicle while under the influence of alcohol," as "committing any one (1) or more of the following acts in a commercial motor vehicle":

(A) Driving a commercial motor vehicle while the person's blood alcohol concentration is four-hundredths of one percent (0.04%) or more;

(B) Driving while intoxicated in violation of [Ark.Code Ann.] § 5–56–103; or

(C) Refusal to undergo such testing as is required by [Ark.Code Ann.] § 5–65–202.

Ark.Code Ann. § 27–23–103(15) (Supp. 2009). Having an "alcohol-related enforcement contact" is clearly not included within this definition.

In addition, the effect of the dismissal of the underlying criminal charges is different in Arkansas than in Missouri. Arkansas law, like Missouri law, provides for suspension of licensure upon an arrest for driving under the influence. *See* Ark.Code Ann. § 5–65–402(a)(1)(A), (B)(i) (Repl. 2005). An acquittal or dismissal of a charge of driving under the influence, however, "serves to reverse the suspension, disqualification, or revocation of the driver's license suspended or revoked under

---

**1.** Section 302.755.1(1) provides that a "person is disqualified from driving a commercial motor vehicle for a period of not less than one year if convicted of a first violation of [d]riving a motor vehicle under the influence of alcohol or a controlled substance, or *of an alcohol-related enforcement contact as defined in subsection 3 of section 302.525.*" (Emphasis added.) Subsection 3 of section 302.525, in turn, defines "alcohol-related enforcement contacts" as including:

any suspension or revocation under sections *302.500 to 302.540,* any suspension or revocation entered in this or any other state for a refusal to submit to chemical testing under an implied consent law, and any

conviction in this or any other state for a violation which involves driving while intoxicated, driving while under the influence of drugs or alcohol, or driving a vehicle while having an unlawful alcohol concentration.

(Emphasis added.)

**2.** Subsection 13 of Mo.Rev.Stat. § 302.700 was amended in 2004 to include, in the definition of "driving under the influence of alcohol," the driving of either a commercial or a noncommercial motor vehicle. *See* 2004 Mo. Legis. Serv. 1043 (West). In this case, Burdine was driving his personal vehicle at the time he was stopped.

this section." Ark.Code Ann. § 5–65–402(d)(2)(B)(i) (Supp.2009). In Missouri, on the other hand, an acquittal or dismissal on a charge of driving under the influence does not preclude administrative revocation of a driver's license. *See* Mo.Rev. Stat. § 302.505.3. There is no provision in the Missouri statute for reversal of the suspension in such circumstances.

These differing definitions of what constitutes "being under the influence of alcohol as prescribed by state law" and the effect of a later dismissal of the criminal charges are what |₁₃present the difficulty in this case, and it is why the parties in this appeal disagree so vehemently about whether Missouri or Arkansas law applies to the controversy. Neither party, however, cites any particularly helpful authority to resolve that issue. Nonetheless, the majority apparently concludes that the federal regulations alone are dispositive of the issue; however, it also relies on Missouri law by way of citation to the *Strup* decision and indicates that Arkansas law is not relevant to the analysis.

Neither party has cited this court to what may be the controlling law on this particular issue—the Arkansas Driver License Compact. *See* Ark.Code Ann. § 27–17–101 (Repl.2008). Both Arkansas and Missouri are parties to the compact. *See* Mo.Rev.Stat. § 302.600. Among the purposes of the compact is "[p]romot[ion of] compliance with the laws, ordinances, and administrative rules and regulations relating to the operation of motor vehicles by their operators in each of the jurisdictions where such operators drive motor vehicles." Ark.Code Ann. § 27–17–101, article I(b)(1) (Repl.2008). In addition, the compact is intended to

> [m]ake the reciprocal recognition of licenses to drive and eligibility therefor more just and equitable by considering the overall compliance with motor vehi-

cle laws, ordinances, and administrative rules and regulations as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states.

The compact has been adopted by forty-five states and has been interpreted as applying to commercial drivers' licenses as well as operators' licenses. *See Strong v. Neth,* 267 Neb. 523, 676 N.W.2d 15 (2004).

|₁₄The compact contains a definition of "conviction" similar to that found in 49 C.F.R. § 383.5, defining the word as:

> a conviction of any offense related to the use or operation of a motor vehicle which is prohibited by state law, municipal ordinance, or administrative rule or regulation, or a forfeiture of bail, bond, or other security deposited to secure appearance by a person charged with having committed any such offense, and which conviction or forfeiture is required to be reported to the licensing authority.

Ark.Code Ann. § 27–17–101, article II(c). The compact further requires licensing states to give effect to convictions that occurred in other compact states, as follows:

> (a) The licensing authority in the home state, for the purposes of suspension, revocation, or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct has occurred in the home state, in the case of convictions for:
>
> . . . .
>
> (2) Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug, or under the influence of any other drug to a degree

which renders the driver incapable of safely driving a motor vehicle[.]

. . . .

(c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) hereof as being applicable to and identifying *those offenses or violations of a substantially similar nature,* and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.

(Emphasis added.) Thus, in certain instances, the Compact requires a licensing authority of the home state to give the same effect to the conduct reported as if such conduct had occurred in the home state.

It may be the case that the pertinent Arkansas and Missouri statutes are not of a "substantially similar nature," for purposes of the Compact. As noted above, however, neither party has cited this court to the Compact or addressed its potential impact or applicability. It is the appellant's burden to demonstrate that reversible error exists. *See Qualls v. Ferritor,* 329 Ark. 235, 947 S.W.2d 10 (1997). I therefore must reluctantly concur and agree to affirm the circuit court.