SLIP OPINION



Cite as 2017 Ark. App. 139

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-16-519

| | |
|---|---|
| | Opinion Delivered March 8, 2017 |
| THOMAS ELLIS STUART<br>APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. CV-2015-96-4] |
| V. | |
| ARKANSAS DEPARTMENT OF FINANCE AND ADMINISTRATION, LARRY WALTHER, DIRECTOR<br>APPELLEE | HONORABLE DON GLOVER, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Thomas Stuart appeals from the circuit court's order affirming the Arkansas Department of Finance and Administration's Office of Driver Services' (DFA) decision to suspend his commercial driving privileges for one year and his noncommercial driving privileges for six months. He argues that the police officer did not have reasonable grounds for initiating a traffic stop and that the statement-of-rights form did not adequately inform him of the consequences of refusing a chemical test. We affirm.

On 19 July 2015, Stuart was arrested and charged with driving while intoxicated (DWI) and refusal to submit to chemical test. As a result, Stuart's driver's license was suspended, and his commercial driver's license (CDL) was disqualified. He requested an administrative hearing to contest the suspension, and DFA conducted a hearing on 6 August 2015. The written summary from that hearing found as follows:

THIS CONTESTED HEARING WITH LICENSEE AND ATTORNEY IS BEING HELD TO CONTEST PROBABLE CAUSE. PROBABLE CAUSE IS NOT AN ISSUE TO BE DETERMINED BY THIS HEARING OFFICER. WE FIND AGAINST THE LICENSEE AND SUSTAIN THE SUSPENSION. CDL DISQUALIFIED 08-18-15 TO 08-18-16 FOR DUI ALCOHOL/REFUSED TEST. NON COMMERICAL SUSPENSION 08-18-15 TO 02-18-16.

Stuart timely sought de novo review by the Drew County Circuit Court.

On 4 December 2015, Stuart filed a motion to suppress evidence obtained as a result of the traffic stop, which he argued was made without probable cause or reasonable suspicion. DFA responded and first argued that while Arkansas had not addressed the issue, the majority of jurisdictions have held that the exclusionary rule does not apply to administrative or civil driver's-license-suspension proceedings. DFA also argued that Ark. Code Ann. § 5-65-402 (Supp. 2013) limits the scope of an administrative proceeding or circuit court de novo appeal and does not authorize a petitioner to argue constitutional issues, so Stuart should not be allowed to raise constitutional claims or request suppression of the evidence. And finally, DFA asserted that Stuart's argument was barred by collateral estoppel and res judicata because he had "previously litigated the same issues of the officer lacking probable cause resulting in an illegal traffic stop at Petitioner's corresponding criminal trial for the charges of DWI and Refusal to Submit." Alternatively, if the circuit court did find that the exclusionary ruled applied, DFA argued that the traffic stop was supported by reasonable suspicion that Stuart had violated a traffic law.

The circuit court held a hearing on 16 December 2015. Stuart clarified that he was challenging both the probable cause to arrest him for DWI and whether he had been properly advised or warned that he would lose his driving privileges if he refused to submit

to a chemical test. Stuart also explained that his criminal case was still ongoing in circuit court. DFA reiterated that this was a civil case and that probable cause was not under review. Stuart countered that the case was "quasi-criminal" due to the punitive nature of his driving privileges being suspended.

Officer James Slaughter, a patrol officer with the Monticello Police Department, testified that on 19 July 2015, he was traveling north on Highway 425 and was behind Stuart's vehicle. Slaughter said that they stopped at a red light at the intersection of Highways 425 and 278; that after the light turned green, Stuart proceeded through the intersection; and that Stuart momentarily drove his vehicle into the southbound turning lane before veering back into his lane. Because of that, Slaughter stopped Stuart for careless and prohibited driving. Slaughter approached Stuart's vehicle, spoke to him, and could smell alcohol on his breath; Stuart admitted having had a beer several hours earlier. Slaughter asked Stuart to perform several field-sobriety tests, the results of which indicated to Slaughter that Stuart was intoxicated. Slaughter also administered a preliminary breath test (PBT), which indicated a .15 blood-alcohol content.

Slaughter arrested Stuart for DWI and transported him to the county detention facility. Slaughter then read to Stuart the DWI statement-of-rights form and asked Stuart if he understood it. Stuart said yes and initialed and signed the form. Slaughter next asked Stuart if he would submit to a breath test, and Stuart said no and also initialed the "no" answer on the form. According to Slaughter, Stuart said that he knew what the PBT result was and that "he was not going to blow because he did not want to lose his CDLs." Stuart was subsequently booked for DWI and refusal to submit.

3

SLIP OPINION

On cross-examination, Slaughter confirmed that he read the following sections from the statement-of-rights form to Stuart:

> If you refuse to take a chemical test, none will be given, but you will subject yourself to the penalties provided by law, which includes, but is not limited to, the suspension or revocation of your driving privileges, and if you are a commercial driver's license holder, the disqualification of your commercial driving privileges.

> If you choose to take a chemical test, and the results reflect an alcohol concentration of eight-hundredths (0.08) or more, or the presence of a controlled substance, or any other intoxicant, your driving privilege will be suspended or revoked, and if you are the holder of a commercial driver's license, your commercial driving privileges will be disqualified.

Slaughter also stated that he told Stuart that the breath test was different than the PBT administered before, but Stuart declined to take the test.

Stuart testified that he worked for Grant Garrett Excavating and that he was required to have a CDL. He claimed that during the traffic stop, he blew into the PBT device two different times, which resulted in a .08 reading the first time and .12 or .13 the second time. He said that he thought the test administered at the detention facility would be the same type of test. Regarding the statements on the form that were read to him, he said that he understood the first statement to mean that it was his option to take the test or not, and he did not understand that his license would be suspended. He acknowledged that the second statement meant that his license would be suspended if the result was over .08, so based on the PBT results, he did not want to take the test and lose his CDL. Stuart claimed that Slaughter never requested that he (Stuart) take a test at the detention facility.

The defense proffered a different statement-of-rights form in which the first statement read "If you refuse, upon the request of a law enforcement officer, to take a

chemical test, **none will be given**, but your privileges to drive, including your commercial driving privilege if you have a commercial driver's license, will be revoked, disqualified, suspended or denied." (Emphasis in original.) The form also included a sentence after the statements that read, "You are now requested to take the test chosen by the officer." Stuart claimed that if he had seen the information as it was on this form, he would have taken the test.

In closing arguments, Stuart's counsel continued to argue that Stuart had not been advised that his license would be suspended or disqualified if he refused the test; the form only advised Stuart that by refusing he would be subject to penalties including the suspension or revocation of driving privileges. Counsel also argued that Stuart had not committed the violation of careless or prohibited driving, so the traffic stop itself was not based on probable cause.

In its oral pronouncement, the court found,

> [T]he officer had reason to stop the vehicle. The vehicle, I mean, it was, you know, reasonable cause. . . . [A]s the vehicle pulled up and took off, it was just on top of that line just for a short while. It could have been eight feet or so. But it just doesn't—and that's sufficient for a police officer to stop somebody.
> And I do uphold the findings of the previous findings which have been made in this case. And the reason—well, the true reason would be the refusal, and—yeah, I'll say refusal. That will be the Court's ruling.

Defense counsel requested clarification, and the following exchange occurred:

> MR. GIBSON: Is the Court ruling that the first initial paragraph on the rights form complies with the state code that says he's supposed to be advised that he will lose his driving privileges by suspension or disqualification by saying it's subject to happen?

> THE COURT: Well, it's been that way for years, hasn't it? I mean—

MR. GIBSON: Well, the form doesn't track the language of the statute. The second paragraph does, but the first paragraph on refusal doesn't say he will lose—his license will be suspended or his commercial driver's license disqualified.

THE COURT: Well, that's my finding. I find that—

MR. GIBSON: Find that that language it uses does tell him that.

THE COURT: Sure, I find that there is basis for the action taken by the officer, you know, when you take into consideration the totality of the circumstances. That will be the Court's ruling.

The court entered a written order affirming the suspension of Stuart's noncommercial driving privileges and disqualification of his commercial driving privileges. Stuart has timely appealed to this court.

Pursuant to Ark. Code Ann. § 5-65-402(c)(4)(A), the circuit court reviews the case de novo and determines, based on a preponderance of the evidence, whether a ground exists for revocation, suspension, disqualification, or denial of the person's privilege to drive. On appeal, we review the circuit court's order and determine whether the circuit court's findings were clearly erroneous. *Burdine v. Ark. Dep't of Finance & Admin.*, 2010 Ark. 455, 379 S.W.3d 476. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court based on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

## I. *Reasonable Grounds*

Stuart frames his first argument as an appeal from the circuit court's denial of his motion to suppress. While the circuit court did rule that the traffic stop was based on reasonable grounds, it did not address suppression or whether the exclusionary rule applied, so we likewise will not address these arguments. The failure to obtain a ruling on an issue

SLIP OPINION

precludes our review on appeal. *Meador v. Total Compliance Consultants, Inc.*, 2013 Ark. 22, 425 S.W.3d 718. We note that Stuart concedes in his brief that this issue is not on appeal.

Stuart also disagrees with the circuit court's finding that his crossing into the southbound turning lane constituted "reasonable cause" for the stop. Stuart argues, as he did below, that there is no evidence that he committed the offense of careless and prohibited driving. The State counters that "[b]y allowing his vehicle to drift into the oncoming turn lane, [Stuart] operated his vehicle in an inattentive manner and failed to maintain control of his vehicle under Ark. Code Ann. § 27-51-104 [Repl. 2014]." The State argues that the circuit court, as the finder of fact, determined that Slaughter had reasonable grounds to initiate the traffic stop and that the court's determination should be affirmed.

We hold that we need not address the validity of the traffic stop because such a review is not contemplated by § 5-65-402. The statute provides that the administrative hearing shall cover the issues of whether the arresting law enforcement officer had reasonable grounds to believe that the person (1) had been operating a motor vehicle while intoxicated or impaired or (2) "[r]efused to submit to a chemical test of the blood, breath, saliva, or urine for the purpose of determining the alcohol concentration or controlled substance contents of the person's breath or blood and whether the person was placed under arrest." Ark. Code Ann. § 5-65-402(a)(8)(D)(i) & (ii). As noted by the hearing officer, probable cause for the stop was not an issue to be decided administratively.

Likewise, the circuit court's review is limited to "whether a ground exists for revocation, suspension, disqualification, or denial of the person's privilege to drive," Ark. Code Ann. § 5-65-402(c)(4)(A), and we review the circuit court's order and determine

SLIP OPINION

whether the circuit court's findings were clearly erroneous. *Burdine, supra.* Regardless of the validity of the stop, there is no doubt that Stuart refused to submit to a chemical test, and the circuit court found this refusal was the "true reason" for the disqualification and suspension of Stuart's commercial and noncommercial driving privileges. We hold that the circuit court did not clearly err in making this determination.

## II. *Properly Informed*

On this point, Stuart argues that he was not informed that his license would be revoked or disqualified if he refused to submit to the chemical test. Instead, he says that he was merely given the "option" of taking the test and that he "did not know that you would 'automatically' lose your license if you refuse the test; he thought that would be decided later in court." Stuart asserts that the circuit court gave "little or no thought" to whether the statement-of-rights form complied with the statute and that "[t]he circuit judge's failure to expand the scope of the hearing to include the issue of whether [Stuart] was informed that his driving privileges would, in fact, be affected if he refused to take the breath test was clearly erroneous."

The State counters that Stuart indicated that he understood his rights, as evidenced by his initials and signature on the statement-of-rights form; that he was asked by Slaughter if he would take the breath test, and that Stuart declined. The State argues that the circuit court correctly determined that Stuart had been informed that he had the right to refuse chemical testing and that his refusal would subject him to possible criminal penalties as well as the suspension of driving privileges.

We find Stuart's argument unpersuasive. Stuart's rights were explained to him, and he indicated that he understood those rights. Any attempt to now argue that he did not understand his rights is not well taken. The statement-of-rights form adequately communicated the choices available and the possible consequences of those choices; and Stuart made his choice.

Affirmed.

HIXSON and BROWN, JJ., agree.

*John F. Gibson, Jr.*, for appellant.

*David W. Parker*, Arkansas Department of Finance and Administration, Office of Revenue Legal Counsel, for appellee.